No.

CR 07 00282 RMW



# UNITED STATES DISTRICT COURT RE-filing

## NORTHERN DISTRICT OF CALIFORNIA Filed

### *SAN JOSE DIVISION*

MAY – 9 2007

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## THE UNITED STATES OF AMERICA

### *vs.*
### MICHAEL A. DALY

## INDICTMENT

**COUNTS ONE - TWENTY-FOUR:**  Title 18, U.S.C. §§ 1343 and 2 - Wire Fraud; Aiding and Abetting

**COUNTS TWENTY-FIVE - THIRTY:**  Title 18, U.S.C. §§ 1957 and 2 - Money Laundering; Aiding and Abetting

*A true bill.*

_____
*Foreperson*

*Filed in open court this* 9 *day of* May
*A.D.* 2007

_____
*United States Magistrate Judge*

*Bail. $* ___No process needed___

1  SCOTT N. SCHOOLS (SCBN 9990)
   United States Attorney
2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12  UNITED STATES OF AMERICA,        CR No. 07 00282

13          Plaintiff,           )  VIOLATIONS:  18 U.S.C. § 1343–Wire
                                  )  Fraud; 18 U.S.C. § 1957–Money
14          v.                    )  Laundering; 18 U.S.C. § 2–Aiding and
                                  )  Abetting; 18 U.S.C. § 981(a)(1)(C) and 28
15  MICHAEL A. DALY,              )  U.S.C. § 2461(c)–Forfeiture; 18 U.S.C.
                                  )  § 982(a)(1)–Forfeiture
16          Defendant.            )
                                  )
17  _____)  SAN JOSE VENUE

18                      I N D I C T M E N T

19  The Grand Jury charges:

20                        BACKGROUND

21      At all times relevant to this Indictment:

22      1.      Data Resource Group, Inc. ("DRG") was based on Salisbury, Massachusetts, and

23  was engaged in the business of reselling networking equipment manufactured and sold by Cisco

24  Systems, Inc. ("Cisco").  DRG's business address was 5C Fanaras Drive, Salisbury,

25  Massachusetts 01952.  DRG also did business through its website www.dataresourcesgroup.com.

26      2.      Defendant Michael A. Daly was President of DRG.

27      3.      Cisco was based in San Jose, California, and was a leading manufacturer and

28  seller of networking equipment and services.


INDICTMENT

1    4.    Mail Boxes Etc. ("MBE"), a UPS company, and UPS had retail service locations
2    throughout the United States. UPS's retail service locations were known as UPS Stores. MBEs
3    and UPS Stores permitted customers to obtain a private mailbox with a real street address, 24-
4    hour access to mail and package deliveries, and services such as packaging receiving,
5    notification, holding, and forwarding.

6    5.    Among other things, Cisco sold SMARTnet service contracts on equipment that
7    allowed the end user to obtain technical support and advance replacement parts for the covered
8    equipment from Cisco. "Advance replacement" allowed end users to obtain replacement parts
9    from Cisco immediately, without having first to return the failed and defective part. SMARTnet
10   contracts were not transferable, and were for the benefit of the original end user. Once the
11   covered product was transferred to another party, any SMARTnet contract associated with the
12   part was removed from coverage. The new owner of the part had the option to register the part
13   with Cisco and obtain a new SMARTnet contract after the part was inspected and relicensed.

14   6.    To provide technical support and advance replacement under SMARTnet
15   contracts, Cisco had a service request ("SR") system that allowed customers to contact Cisco and
16   obtain assistance with regard to defective and inoperative parts. A customer initiated an SR by
17   phone and by creating an account on Cisco Connection Online ("CCO"), a web-based customer
18   support application. To do so, the customer created an account on CCO, obtained a username,
19   and logged in to provide the SMARTnet contract number, serial number on the chassis of the
20   equipment covered by that SMARTnet contract, and a written explanation of the problem. SRs
21   were made through Cisco's Technical Assistance Center ("TAC").

22   7.    Service engineers at the TAC engaged in a verbal and electronic written dialogue
23   with the customer in an attempt to resolve the issue, following a standardized series of resolution
24   attempts. If this protocol did not resolve the issue, the part was deemed failed and defective, and
25   the service engineer would issue a return material authorization ("RMA") number by which
26   Cisco tracked the advance-shipped replacement part.

27   8.    Once an RMA was authorized, Cisco shipped the replacement part, typically using
28   Federal Express, along with a preaddressed, prepaid United Parcel Service or Federal Express

INDICTMENT                          2

label and package for the failed and defective part to be returned. Cisco required the end user to send back the failed and defective equipment within 30 days. The status of the RMA was monitored through the internet and by phone, and communications concerning the RMA were made through the internet and by phone.

COUNTS ONE THROUGH TWENTY-FOUR:     (18 U.S.C. §§ 1343 and 2–Wire Fraud; Aiding and Abetting)

9.     The factual allegations in paragraphs 1 through 8 are re-alleged and incorporated herein as if set forth in full.

THE SCHEME TO DEFRAUD

10.     Beginning on a date unknown, but by no later than in or about June 2003, and continuing to in or about February 2007, in the Northern District of California and elsewhere, the defendant

MICHAEL A. DALY

knowingly, and with the intent to defraud, devised and intended to devise, and participated in, a material scheme and artifice to defraud Cisco as to a material matter and to obtain money and property by means of material false and fraudulent pretenses, representations and promises, and the concealment of material facts by repeatedly creating fictitious names, using these fictitious names to rent private mailboxes around the United States, associating the fictitious names and particular Cisco parts with SMARTnet contracts, contacting Cisco under the guise of the fictitious names, falsely and fraudulently informing Cisco that parts supposedly covered by SMARTnet were failed and defective and needed to be replaced, causing Cisco to send "replacement" parts to private mailboxes he rented using fictitious names, failing to return any part to Cisco, and selling the "replacement" parts to customers.

11.     It was part of the scheme and artifice that the defendant, at times directly and at other times through his employees, created fictitious personal names and company names, and used those names to create email accounts at different email providers. Using these fictitious names, the defendant obtained private mailboxes at UPS Stores and MBEs in different states. The defendant would then instruct employees at each UPS Store and MBE to forward overnight

INDICTMENT                         3

1   any packages he received at the mailbox to him at his business address, 5C Fanaras Drive,

2   Salisbury, Massachusetts 01952.

3       12.     It was further part of the scheme and artifice that the defendant, at times directly

4   and at other times through his employees, contacted Cisco through the internet, falsely posing as

5   a representative of a fictitious company, and claiming that he had a failed and defective Cisco

6   part covered by SMARTnet. He provided Cisco with an apparently valid SMARTnet contract

7   number and the serial number of the chassis of the supposedly failed and defective part. In

8   addition, the defendant falsely listed the various steps he claimed he had done to troubleshoot the

9   part, in order to induce Cisco send him a replacement overnight. The defendant would provide a

10  street address for the fictitious business that appeared to be legitimate but was in fact a private

11  mailbox at either a UPS Store or MBE.

12      13.     It was further part of the scheme and artifice that the defendant, at times directly

13  and at other times through his employees, caused Cisco to create an RMA and to mail the

14  defendant a "replacement" part to replace the supposedly failed and defective part covered by the

15  SMARTnet contract. Usually the same day, Cisco shipped that "replacement" part to the address

16  the defendant provided for the fictitious company, through a commercial interstate carrier,

17  typically Federal Express. Once the "replacement" part arrived at the address, which was really a

18  private mailbox, the UPS Store or MBE that owned the mailbox would forward the part to Daly

19  at 5C Fanaras Drive, Salisbury, Massachusetts 01952.

20      14.     It was further part of the scheme and artifice that, even though the defendant's

21  SMARTnet contract required him to return the failed and defective part about which he had

22  contacted Cisco, he returned no part.

23      15.     It was further part of the scheme and artifice that the defendant, at times directly

24  and at other times through his employees, sold the "replacement" part, usually before causing

25  Cisco to send him the part and at other times shortly after causing Cisco to send him the part.

26  The defendant sometimes sold "replacement" parts he planned to obtain and did obtain through

27  the scheme and artifice to customers for $10,000 or less and at other times for more than

28  $10,000. After selling a "replacement" part to a customer, the defendant received payment from

INDICTMENT                              4

the customer, typically in the form of a check.  The defendant then deposited the payment in

DRG's bank account.  Once a "replacement" part arrived, the defendant shipped it to his

customer, typically using Federal Express.

THE USE OF THE WIRES

16.    Among other transmittals, on or about the dates listed below, in the Northern

District of California and elsewhere, for the purpose of executing the aforementioned scheme and

artifice to defraud and attempting to do so, the defendant

MICHAEL A. DALY

knowingly transmitted and caused to be transmitted, in interstate and foreign commerce, by

means of wire communications, certain writings, signs, and signals, that is, transmissions from

Massachusetts to a server at Cisco in San Jose, California, as set forth in the counts below:

| Count | Date | Wire Communication |
| --- | --- | --- |
| 1 | 6/13/04 | Service Request 600238347 |
| 2 | 10/1/04 | Service Request 600569010 |
| 3 | 10/18/04 | Service Request 600615004 |
| 4 | 11/2/04 | Service Request 600661187 |
| 5 | 11/28/04 | Service Request 600734291 |
| 6 | 12/08/04 | Service Request 600766200 |
| 7 | 12/14/04 | Service Request 600779901 |
| 8 | 12/15/04 | Service Request 600787046 |
| 9 | 4/1/05 | Service Request 601084795 |
| 10 | 4/25/05 | Service Request 601178683 |
| 11 | 1/1/06 | Service Request 602711755 |
| 12 | 1/6/06 | Service Request 602744493 |
| 13 | 1/19/06 | Service Request 602822881 |
| 14 | 1/24/06 | Service Request 602849911 |
| 15 | 1/26/06 | Service Request 602865657 |
| 16 | 1/28/06 | Service Request 602883313 |
| 17 | 1/31/06 | Service Request 602893677 |
| 18 | 2/8/06 | Service Request 602956549 |

INDICTMENT                                  5

| Count | Date | Wire Communication |
|---|---|---|
| 19 | 2/21/06 | Service Request 603034271 |
| 20 | 5/8/06 | Service Request 603518607 |
| 21 | 6/9/06 | Service Request 603737705 |
| 22 | 7/17/06 | Service Request 603967397 |
| 23 | 2/16/07 | Service Request 605399701 |
| 24 | 2/23/07 | Service Request 605446589 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

COUNTS TWENTY-FIVE THROUGH THIRTY:    (18 U.S.C. §§ 1957 and 2–Money Laundering; Aiding and Abetting)

17.    The factual allegations in paragraphs 1 through 8 and paragraphs 10 through 15, including the scheme to defraud described therein, are re-alleged and incorporated herein as if set forth in full.

18.    Among other transactions, on or about the dates set forth in counts below, in the Northern District of California and elsewhere, the defendant knowingly engaged in monetary transactions by and through a financial institution, in and affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, deposits and transfers of funds in the approximate amounts set forth in the counts below, more than $10,000 of such funds having been derived from a specified unlawful activity, that is, wire fraud:

| Count | Date | Monetary Transaction | Amount |
|---|---|---|---|
| 25 | On or about 9/15/06 | Deposit and transfer of funds by check from Wells Fargo bank account to Eastern Bank account | $45,800 |
| 26 | On or about 10/5/06 | Deposit and transfer of funds by check from Bank of America account to Eastern Bank account | $26,000 |
| 27 | On or about 10/18/06 | Deposit and transfer of funds by check from Virginia Commerce Bank account to Eastern Bank account | $46,100 |

INDICTMENT                    6

| Count | Date | Monetary Transaction | Amount |
|-------|------|----------------------|--------|
| 28 | On or about 12/7/06 | Deposit and transfer of funds by check from Virginia Commerce Bank account to Eastern Bank account | $38,900 |
| 29 | On or about 12/26/06 | Deposit and transfer of funds by check from Wells Fargo bank account to Eastern Bank account | $62,300 |
| 30 | On or about 1/3/07 | Deposit and transfer of funds by check from Bank of America account to Eastern Bank account | $45,500 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

FIRST FORFEITURE ALLEGATION:     (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

19.     The factual allegations contained in paragraphs 1 through 8, paragraphs 10 through 15, and Counts One through Twenty-Four of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

20.     Upon conviction of any of the offenses alleged in Counts One Through Twenty-Four of this Indictment, the defendant

MICHAEL A. DALY

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property constituting, and derived from, proceeds the defendant obtained, directly or indirectly, as the result of said violations, including but not limited to the following property:

a.     a sum of money equal to the total amount of proceeds defendant derived from the commission of said offenses.

21.     If, as a result of any act or omission of the defendant, any of said property

a.     cannot be located upon the exercise of due diligence;

INDICTMENT                                    7

b.      has been transferred or sold to or deposited with, a third person;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property that cannot be divided without

difficulty

any and all interest the defendant has in any other property, up to the value of the property

described in paragraph 20 above, shall be forfeited to the United States pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section

2461(c).

SECOND FORFEITURE ALLEGATION:   (18 U.S.C. § 982(a)(1))

22.     The factual allegations contained in paragraphs 1 through 8, paragraphs 10

through 15, and Counts Twenty-Five through Thirty of this Indictment are hereby re-alleged and

by this reference fully incorporated herein for the purpose of alleging forfeiture pursuant to the

provisions of Title 18, United States Code, Section 982(a)(1).

23.     Upon conviction of any of the offenses alleged in Counts Twenty-Five through

Thirty of this Indictment, the defendant

MICHAEL A. DALY

shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all

right, title, and interest in property, real and personal, involved in said violations, or any property

traceable to such property, including but not limited to the following:

a.      all commissions, fees, and other property constituting proceeds of said

offenses;

b.      all property used in any matter to commit or facilitate the commission of

said offenses;

c.      a sum of money equal to the total amount of money involved in the

commission of said offenses.

24.     If, as a result of any act or omission of the defendant, any of said property

a.      cannot be located upon the exercise of due diligence;

INDICTMENT                              8

b.    has been transferred or sold to or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property that cannot be divided without difficulty

any and all interest the defendant has in any other property, up to the value of the property described in paragraph 23 above, shall be forfeited to the United States pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

DATED:                                          A TRUE BILL.

5/9/07

                                                FOREPERSON

SCOTT N. SCHOOLS
United States Attorney


MATTHEW A. PARRELLA
Chief, San Jose Branch Office

(Approved as to form:
AUSA LAMBERTI

INDICTMENT                          9

**DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT**

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

| Name of District Court, and/or Judge/Magistrate Location |
| --- |
| NORTHERN DISTRICT OF CALIFORNIA |

─── OFFENSE CHARGED ───

See attached sheet.

E-filing

☐ Petty
☐ Minor
☐ Misde-
  meanor
☒ Felony

PENALTY:

See attached sheet.

─── DEFENDANT - U.S. ───

▶ MICHAEL A. DALY

*Filed*

DISTRICT COURT NUMBER

MAY - 9 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

CR 07 00282 RMW

─── PROCEEDING ───

Name of Complainant Agency, or Person (& Title, if any)

Special Agent Edmund Ewing, FBI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. Att'y  ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

SHOW DOCKET NO.

MAGISTRATE CASE NO.
07-70118

Name and Office of Person Furnishing Information on THIS FORM      KEVIN V. RYAN

☒ U.S. Att'y  ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned)      MATTHEW A. LAMBERTI

─── DEFENDANT ───

IS NOT IN CUSTODY

1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)
_____

IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges   } ☐ Fed'l  ☐ State

If answer to (6) is "Yes", show name of institution
_____

Has detainer been filed?  ☐ Yes  ☐ No   If "Yes" give date filed _____

DATE OF ARREST ▶      Month/Day/Year _____

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶      Month/Day/Year _____

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT    Bail Amount: _____

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____

Before Judge: _____

Comments:

**INDICTMENT**
*UNITED STATES v. MICHAEL A. DALY*
**ATTACHMENT TO PENALTY SHEET**

DEFENDANT:

MICHAEL A. DALY

OFFENSE CHARGED:

18 U.S.C. § 1343 and 2–Wire Fraud; Aiding and Abetting (Counts 1 through 24)

PENALTY:

20 years imprisonment
$250,000 fine or twice the gross gain or loss, whichever is greater
3 years supervised release
$100 mandatory special assessment

OFFENSE CHARGED:

18 U.S.C. § 1957 and 2–Money Laundering; Aiding and Abetting (Counts 25 through 30)

PENALTY:

10 years imprisonment
$250,000 fine or twice the amount of the criminally derived property involved in the
    transaction, whichever is greater
3 years supervised release
$100 mandatory special assessment