Douglas I. Louison (*Pro hac vice*) (BBO # 545191)
Bradford N. Louison (*Pro hac vice*) (BBO # 305755)
David E. Condon (*Pro hac vice*) (BBO # 642741)
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110
Tel: (617) 439-0305
Fax: (617) 439-0325
E-mail:  dlouison@merricklc.com
Representing Michael A. Daly, Defendant

Local Counsel:
Benjamin W. Williams, Esq. (SBN # 230861)
John Williams, Esq. (SBN # 43912)
Manchester, Williams & Seibert
125 S. Market Street
Suite 1100
San Jose, CA  95113-2286
Tel:  (408) 287-6193

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** ) | | |
| ) | | |
| **Plaintiff,** ) | | **CASE NO: 07-00282-RMW** |
| ) | | |
| **v.** ) | | **HEARING DATE:** |
| ) | | **SEPTEMBER 17, 2007** |
| **MICHAEL A. DALY,** ) | | [TIME] |
| ) | | |
| **Defendant.** ) | | |

# TABLE OF CONTENTS

MEMORANDUM OF LAW………………………………………………………...1

    **I. STATEMENT OF THE ISSUES**……………………………………….…2

        A.  Whether changing the venue to the USDC in Boston would provide greater convenience to the Defendant in light of the Boston location of the Defendant, potential witnesses, the events in dispute, relevant documents and records, and the Defendant's attorneys; enable easier accessibility to the trial for the Defendant and his witnesses; significantly lower his expenses, cause less disruption to the Defendant's business, and ease the criminal docket for the United States District Court ("USDC") for the Northern District of California.

        B.  Whether the Defendant's arrest and indictment as reported in inflammatory and pervasive media reports and compounded by local bias in favor of the venue's largest private employer, Cisco Systems, Inc., create so great a prejudice against the Defendant so as to prevent him from obtaining a fair and impartial trial, therefore transferring the venue to the USDC for the District of Massachusetts in Boston, Massachusetts would be in his interest of justice.

    **II. STATEMENT OF THE RELEVANT FACTS**…………………………….3

    **III. ARGUMENTS**……………………………………………………….…5

        A.  AN ANALYSIS OF *PLATT* FACTORS DEMONSTRATES THAT TRANSFERRING THE VENUE TO BOSTON WOULD INCREASE CONVENIENCE FOR DALY BECAUSE OF THE COMMON BOSTON RESIDENCE OF DALY AND POTENTIAL WITNESSES, LOCATION OF RELEVANT DOCUMENTS AND RECORDS, EVENTS LIKELY TO BE IN ISSUE AND HIS ATTORNEYS; ADDITIONALLY, TRANSFERRING THE VENUE WOULD SIGNIFICANTLY LOWER EXPENSES FOR DALY, CAUSE LESS DISRUPTION TO HIS BUSINESS AFFAIRS, PROVIDE EASIER ACCESSIBILITY TO THE TRIAL FOR DALY AND HIS WITNESSES AND LASTLY, RELIEVE THE BURDEN ON THE CRIMINAL DOCKET IN THE NORTHERN DISTRICT OF CALIFORNIA.

        B.  LOCAL PREJUDICE CAUSED BY THE INFLAMMATORY AND PERVASIVE MEDIA REPORTS ABOUT DALY AND LOCAL BIAS IN SUPPORT OF SAN JOSE'S LARGEST PRIVATE EMPLOYER, CISCO SYSTEMS, INC., CREATE PRESUMED PREJUDICE AGAINST DALY, WHICH INFRINGES ON HIS CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY AND TRIAL IN SAN JOSE.

**IV. CONCLUSION**……………………………………………….………15

APPENDIX A…………………………………………………………………17

APPENDIX B…………………………………………………………………19

# TABLE OF AUTHORITIES

CASES                                                                                    Page(s)

*Bashor v. Risley*, 730 F.2d 1228, 1235 (9th Cir.1984), cert. denied, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984)………………………………………………………………13

*Harris v. Pulley,* 885 F.2d 1354, 1361 (9th Cir.1988), *cert. denied*, 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990)……………………………………………………....5, 13

*Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)……………..……..………………………………………………………….....……5

*Platt v. Minnesota Mining & Manufacturing, Co.*, 376 U.S. 240, 243-44, 84 S.Ct. 769, 771, 11 L.Ed.2d 674 (1964)…………………………………………………..…….5, 6, 7, 8

*Sheppard v. Maxwell*,
384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)………………………………13

*United States v. Daewoo Industrial Co., Ltd.*
591 F.Supp. 157 (D.C.Or. 1984)…........................................................................7, 10, 11

*United States v. Flores-Elias*, 650 F.2d 1149, 1150 (9th Cir.1981)……………..….13, 14

*United States v. McDonald*, 576 F.2d 1350, 1354 (C.A.Ariz., 1978)…………………....14

*United States v. McDonald*, 740 F.Supp. 757, 761 (D. Alaska 1990)……….. …6, 7, 8, 12

*United States v. Sherwood,* 98 F.3d 402, 410 (9th Cir.1996)……………………………13

STATUTES

18 U.S.C. §§ 1343 and 2………………………………………………………………..4

18 U.S.C. §§ 1957 and 2………………………………………………………………..4

FEDERAL RULES

Federal Rule of Criminal Procedure 18………………………………………………...5

Federal Rule of Criminal Procedure 21(a) ………………………………………....5, 6, 12

Federal Rule of Criminal Procedure 21(b)……………………………...……………………6

MISCELLANEOUS

Cisco, *Corporate Overview*, *available at*
http://newsroom.cisco.com/dlls/company_overview.html (last accessed August 1, 2007.................3

Cisco, *Company Overview – Frequently Asked Questions*, *available at*
http://investor.cisco.com/phoenix.zhtml?c=81192&p=irol-faq#1022
(last accessed August 1, 2007……………………………………………………………..3

J. Duff, Judicial Business of the United States Courts, *Annual Report*, Table D-1, at 217
and 221 (2006)……………………………………………………………………...…11

The Mercury News, *Cisco's profits soars 34%* (May 9, 2007)*, available at*
http://www.siliconvalley.com/companies/ci_5852431 (last accessed August 1, 2007)....................3

U.S. News & World Report, *Top Computer Crimes of 2007 (First Quarter)* (May 15,
2007)*, available at*
http://www.usnews.com/usnews/news/badguys/070515/top_computer_crimes_of_2007_f
i.htm#more (last accessed August 1, 2007)**……………………………………..…..5, 14**

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR CHANGE OF VENUE

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:  Defendant, Michael A. Daly, by and through his undersigned attorney, files this Memorandum of Law in Support of Defendant's Motion for Change of Venue and would show this Honorable Court as follows:

## I.  STATEMENT OF THE ISSUES

A.  Whether changing the venue to the USDC in Boston would provide greater convenience to the Defendant in light of the Boston location of the Defendant, potential witnesses, the events in dispute, relevant documents and records, and the Defendant's attorneys; enable easier accessibility to the trial for the Defendant and his witnesses; significantly lower his expenses, cause less disruption to the Defendant's business, and ease the criminal docket for the United States District Court ("USDC") for the Northern District of California.

B.  Whether the Defendant's arrest and indictment as reported in inflammatory and pervasive media reports and compounded by local bias in favor of the venue's largest private employer, Cisco Systems, Inc., create so great a prejudice against the Defendant so as to prevent him from obtaining a fair and impartial trial, therefore transferring the venue to the USDC for the District of Massachusetts in Boston, Massachusetts would be in his interest of justice.

## II.  STATEMENT OF THE RELEVANT FACTS

The Defendant, Michael A. Daly ("Daly"), currently resides in Danvers, Massachusetts.  At all periods of the alleged crime from June 2003 and continuing to February 2007, Daly was the President and owner of Data Resources Group, Inc., ("DRG") formerly based in Salisbury, Massachusetts.  DRG's business sold used and refurbished computer hardware components to authorized resellers of computer hardware.

Cisco Systems, Inc. ("Cisco") is a worldwide leader in the development of internet networking technology, including routers and switches.[1]   Based in San Jose, California, Cisco employs approximately 56,790 employees worldwide.[2]  Cisco's San Jose headquarters staffs nearly 15,500 employees, making it the largest private employer in the San Jose area.[3]

Cisco offers product customers the option of purchasing SMARTnet contracts, which enables customers to call Cisco for technical support or receive advance replacements on defective parts before the customer ships the parts back to Cisco.  *Gov't Indictment* at 2:6-9.  A component's coverage under SMARTnet terminates when a customer transfers the component to another party; however, the party has the option of purchasing a new SMARTnet contract for the component.  *Indictment* at 2:10-13.

To obtain technical assistance, Cisco's on-line "service request" system allows

---

[1] Cisco, *Corporate Overview*, *available at* http://newsroom.cisco.com/dlls/company_overview.html (last accessed August 1, 2007).
[2] Cisco, *Company Overview – Frequently Asked Questions*, *available at* http://investor.cisco.com/phoenix.zhtml?c=81192&p=irol-faq#1022 (last accessed August 1, 2007).
[3] The Mercury News, *Cisco's profits soars 34%* (May 9, 2007)*, available at* http://www.siliconvalley.com/companies/ci_5852431 (last accessed August 1, 2007).

customers to register on the web-based Cisco Connection Online system to report any problems or defects. *Indictment* at 2:14-18. In turn, a Cisco technical service engineer would contact the customer and together they would attempt to solve the cause of the defect. *Indictment* at 2:22-24. If the engineer is unable to resolve the problem, then he or she orders an immediate shipment of the replacement to the customer, who then has an obligation to return the defective part to Cisco. *Indictment* at 2:22-3:2.

The government has charged Daly with twenty-four counts of violating 18 U.S.C. §§ 1343 and 2 (wire fraud; aiding and abetting) based on twenty-four incidents of service requests allegedly transmitted by Daly, from a Massachusetts server, to a Cisco server in California. *Indictment* at 5:5-6:7. The government has also charged Daly with five counts of violating 18 U.S.C. §§ 1957 and 2 (money laundering; aiding and abetting) based on five bank deposits valued at more than $10,000, which the government ties to Daly's alleged sale of replacement parts to computer hardware dealers. *Indictment* at 6:9-7:9. In particular, the government accuses Daly of using fictitious identities to make service requests on Cisco parts no longer covered under SMARTnet contracts in order to receive advance replacement parts for re-sale to Cisco hardware dealers. *Indictment* at 3:13-23. Daly's alleged alter egos did not return the reported defective parts to Cisco as required by SMARTnet contracts. *Indictment* at 3:22-23.

Daly's arrest on February 27, 2007, in Massachusetts, and later his indictment on May 9, 2007, in California, generated widespread local media attention and reached major national and international news outlets as well as numerous technology news websites. *See* Appendix A. Recently, *U.S. News & World Report* named Daly as one of

its "Bad Guys" in an article entitled "Top Computer Crimes of 2007."[4]

## III. ARGUMENTS

A.  AN ANALYSIS OF *PLATT* FACTORS DEMONSTRATES THAT
TRANSFERRING THE VENUE TO BOSTON WOULD INCREASE
CONVENIENCE FOR DALY BECAUSE OF THE COMMON BOSTON
RESIDENCE OF DALY AND POTENTIAL WITNESSES, LOCATION OF
RELEVANT DOCUMENTS AND RECORDS, EVENTS LIKELY TO BE IN
ISSUE, AND HIS ATTORNEYS; ADDITIONALLY, TRANSFERRING THE
VENUE WOULD SIGNIFICANTLY LOWER EXPENSES FOR DALY,
CAUSE LESS DISRUPTION TO HIS BUSINESS AFFAIRS, PROVIDE
EASIER ACCESSIBILITY TO THE TRIAL FOR DALY AND HIS
WITNESSES AND LASTLY, RELIEVE THE BURDEN ON THE CRIMINAL
DOCKET IN THE NORTHERN DISTRICT OF CALIFORNIA.

"The standards governing a change of venue ultimately derive from the due

process clause of the Fourteenth Amendment which safeguards a defendant's Sixth

Amendment right to be tried by 'a panel of impartial, indifferent jurors.' " *Harris v.*

*Pulley,* 885 F.2d 1354, 1361 (9th Cir.1988), *cert. denied*, 493 U.S. 1051, 110 S.Ct. 854,

107 L.Ed.2d 848 (1990) (quoting *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 6

L.Ed.2d 751 (1961).  Federal Rule of Criminal Procedure 18 designates the district where

the alleged offense occurred as the venue for trial but notes that the trial court should

consider the convenience of the venue to the defendant and witnesses.[5]

Federal Rule of Criminal Procedure 21 sets out two exceptions to Rule 18 and

---

[4] David E. Kaplan, *Top Computer Crimes of 2007 (First Quarter)*(May 15, 2007),
*available at*
http://www.usnews.com/usnews/news/badguys/070515/top_computer_crimes_of_2007_f
i.htm#more (last accessed August 1, 2007).

[5] Fed. R. Crim. P. 18 states, "Unless a statute or these rules permit otherwise, the
government must prosecute an offense in a district where the offense was committed.
The court must set the place of trial within the district with due regard for the
convenience of the defendant and the witnesses, and the prompt administration of
justice."  Fed. R. Crim. P. 18.

allows a party to petition the court for a change of venue for convenience to the defendant or local prejudice.  *See* Fed. R. Crim. P. 21.  A defendant moving for a change of venue may invoke Federal Rule of Criminal Procedure 21(b) when an offense was allegedly committed in more than one district and a transfer of venue is in the interest of justice. *United States v. McDonald*, 740 F.Supp. 757, 761 (D. Alaska 1990).  Rule 21(b) states: "For the convenience of parties and witnesses, and in the interests of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district."  Fed. R. Crim. P. 21(b).  Moreover, the "[p]rimary concern of Rule 21(b) is to 'minimize the inconvenience to the defense.' " *McDonald*, 740 F.Supp. at 762; s*ee* Fed. R. Crim. P. 21(b) Advisory Notes.

Here, Rule 21(b) applies to Daly's Motion for Change of Venue because the alleged fraud occurred in more than one district as the alleged wire and monetary transactions would have originated from DRG offices in the greater Boston area, and therefore, substantially relate to the loss in property that supposedly occurred in Cisco's San Jose location.

The U.S. Supreme Court provided guidelines for determining Rule 21(b) motions in *Platt v. Minnesota Mining & Manufacturing, Co.*, 376 U.S. 240, 243-44, 84 S.Ct. 769, 771, 11 L.Ed.2d 674 (1964).  *See McDonald*, 740 F.Supp. at 762.  When considering a 21(b) motion, the reviewing court may consider the following factors:  (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be in issue; (4) the location of documents and records likely to be involved; (5) the disruption of defendant's business unless the case is transferred; (6) expense to the parties, (7) location of counsel; (8) relative accessibility of place of trial;  (9) docket

condition of each district or division involved; and (10) other special elements which might affect the transfer.  *Id.; U.S. v. Daewoo Industrial Co., Ltd.*, 591 F.Supp. 157, 158 (D.C.Or. 1984).

In *U.S. v. McDonald,* the district court granted a motion for a change of venue in a mail and wire fraud case after an analysis of the *Platt* factors established that keeping the venue in Alaska would inconvenience the Washington State based defendants and their witnesses, and that a transfer of venue would best preserve their interests of justice. *McDonald*, 740 F.Supp. at 765.  The court found that Washington served as a natural venue for the defendants since they, their businesses, and the majority of the witnesses resided in Washington.  *Id.*  Additionally, Washington was substantially connected to the monetary transactions, mailings and telephone calls at issue in the case, and Washington offered a more accessible location for the majority of the witnesses in the case.  *Id.* Although the court's Order also mentioned the possibility of a volcanic eruption in Alaska as a potential disruption to the trial as an additional consideration for granting the motion, an analysis of the *Platt* factors to Daly's case demonstrate an overwhelming weight in favor of Daly.  *See McDonald*, 740 F.Supp. at 763.

Finally, in evaluating the fairness of venue, the *McDonald* court also discussed the policy consideration of ensuring that a community has the opportunity to try and penalize a citizen for any crimes conducted in its state.  *Id*. at 765.  In *McDonald*, the court ruled that the distance and time required to travel from Washington to Alaska, as well as the potential for a volcanic eruption to interrupt the trial, made it imprudent and impractical to bring witnesses to the designated venue in Alaska.  *Id.*

Similarly, in *U.S. v. Daewoo*, the court granted defendants' motion to change

venue from Oregon to California pursuant to an analysis of the *Platt* factors. The court determined that conducting the trial in Oregon would have resulted in a substantial inconvenience to the California located defendants, and that the interests of justice would be best served by changing the venue to California. *Id.* at 165. The court granted the transfer due to the inconvenience and expense to witnesses and defendants were the trial to be held in Oregon, the potential disruption to the defendants business interests due to protracted absences from their offices which would occur if the trial was held in Oregon, and the special circumstances arising from defendants cultural difficulties, such as the necessity for a Korean interpreter and lack of a Korean community within the Oregon population. *Id.* at 165

Applying the *Platt* factors to the defendant's circumstances clearly illustrate that changing the venue of Daly's trial from San Jose to Boston would best serve the interests of justice and be most convenient for the defendant, as well as his potential witnesses.

(1) Location of defendant: Daly currently resides in Danvers, Massachusetts, a local suburb of Boston. Daly would have to travel more than 3,000 miles to attend his trial in San Jose. Considering the *McDonald* court's concern over the distance between Alaska and Washington that the defendants and witnesses would have to travel, Daly's much longer bi-coastal journey should raise similar concerns over the hardship caused by the distance and time-related travel expected in Daly's case.

(2) Location of possible witnesses: Potential witnesses that may testify on behalf of Daly reside in Massachusetts. Additionally, Daly would call character witnesses to speak about his reputation in his residential and business communities; most of these witnesses would also come from the Boston area

(3) Location of events likely to be in issue: Although Boston and San Jose are both substantially connected to the transactions at issue, the critical conduct alleged took place in Boston. The government bases its wire fraud charges on twenty-four service requests supposedly transmitted by Daly from a server in Massachusetts. Moreover, to perpetrate the fraud, the government accuses Daly and his employees of creating false identities and e-mail accounts from DRG's office in Salisbury, Massachusetts to request replacement parts for non-defective Cisco products. Assuming that Daly and his employees had requested Cisco replacement parts, they would have received the advanced replacements at DRG's office, where the government alleges that Daly and his employees sold the parts to dealers of Cisco hardware. The government connects some of these sales to five bank deposits in Massachusetts banks that serve as the basis for Daly's five counts of money laundering charges. Since Boston serves as the location of the critical conduct alleged in the wire fraud and money laundering charges, Boston is the natural venue to try Daly.

(4) The location of documents and records likely to be involved: Boston is also the site of any documents and records likely to be involved in Daly's case. Any relevant business records, including purchase orders, e-mails, contracts, and shipping slips, involved in the alleged crime would have originated from DRG's office in the Boston area. Although the government possesses most of the critical documents, the amount of documents at issue is such that the transfer of the relevant documents from San Jose to Boston would not pose an undue burden on the government.

(5) The disruption of defendant's business unless the case is transferred: Daly's current business of restoring classic cars is located in the greater Boston area.

Transferring venue to Boston would enable Daly to manage and oversee his business without the complicated difficulties that would arise if he sat trial in San Jose. As illustrated by *Daewoo*, a protracted trial in San Jose, where Daly has no business office, would be unduly burdensome to his ability to run his business; thus, fairness requires changing the venue to Boston. Moreover, Daly manages the business by himself and could not rely on a business associate to manage his business with the same competency.

(6) Expense to the parties: Transferring the venue to Boston would considerably lessen expenses for Daly if he, his witnesses, and counsel did not have to travel to San Jose. As defendant, counsel, and witnesses would be forced to travel to San Jose, the expenses incurred would be significantly greater than if the trial were held in Boston.

Although a transfer of venue to Boston would increase costs to the government, the costs would be minimal since the government would most likely have the opportunity to avail itself of the U.S. Attorney's Office facilities in Boston. Furthermore, the U.S. Attorney General's office in Boston is located in the same building as the Federal District Court for the District of Massachusetts, thus increasing the convenience to the government. In light of the personal and financial expenses that Daly would incur to travel the 3,000-mile journey from Boston to San Jose, Daly's expenses appear to far outweigh any costs to the government.

(7) Location of counsel: Daly's primary counsel resides and works out of their office in Boston. Transferring the venue to Boston would significantly increase convenience to counsel since it would eliminate the bi-coastal journeys, travel time, and travel-related expenses for the pre-trial and trial proceedings and would allow Daly's counsel to work out of their office in Boston. As stated earlier, since the government

could work out of the Boston-based U.S. Attorney General's office, the transfer of venue would not prohibitively inconvenience the government.

(8)  Relative accessibility of place of trial:  San Jose's location on the opposite coast of Boston sets up one of the longest journeys a defendant would have to travel to defend himself in the U.S.  The bi-coastal distance imposes substantial burdens of inconvenience, travel time, and expense on the defendant's potential witnesses. Importantly, transferring the venue to Boston would ease the travel requirements on Daly and his witnesses.  Additionally, although Boston and San Jose both are easily accessible by commercial airlines, Boston has significantly more flights to and from San Jose.  *See* Appendix B.  As *Daewoo* stated, the increased availability of travel options is beneficial, as it may enhance trial date flexibility, as well as reduce travel time for parties.  *Daewoo,* 591 F.Supp. at 164.

(9)  Docket condition of each district or division involved:  For the fiscal year ending September 30, 2006, the District of Massachusetts had 342 criminal cases filed as compared to 661 cases in the Northern District of California.  J. Duff, Judicial Business of the United States Courts, *Annual Report*, Table D-1, at 217 and 221 (2006).  Currently, there are 13 active and 3 senior district judges serving the District of Massachusetts, whereas there are 14 active and 4 senior district judges in the Northern District of California.  This means that while the active caseload in the District of Massachusetts is approximately 21 criminal cases per judge, in the Northern District of California, the average caseload is approximately 37 cases per judge.  Thus in practical terms, transferring the venue of Daly's trial from the Northern District of California would relieve the burden on the criminal docket in that district and weighs in favor of moving

the venue to the District of Massachusetts.

(10) Other Special Elements Which Might Affect the Transfer:  The court should also consider the defendant's obligation as the sole financial provider for his wife and disabled minor daughter.  In addition to providing financial support, Mr. Daly has a significant role in providing care to his disabled daughter.  If forced to stand trial in San Jose, the burden of caring for his daughter would then fall solely upon his wife.  The defendant would also be forced to travel out to San Jose alone, as his wife and disabled daughter would not be able to attend the trial, thus denying him the support of his family and friends.

Lastly, just as the court in *McDonald* evaluated the policy considerations in assessing the fairness of venue, Daly argues that this Honorable Court should similarly find that the distance and time required of Daly and his witnesses to travel across the country and participate in a San Jose trial are impractical and imprudent.  Given that the distance between Alaska and Washington State is far less than the distance between San Jose and Boston, the burdens of time, expense, and distance favor a transfer of venue.

B.  LOCAL PREJUDICE CAUSED BY THE INFLAMMATORY AND PERVASIVE MEDIA REPORTS ABOUT DALY AND LOCAL BIAS IN SUPPORT OF SAN JOSE'S LARGEST PRIVATE EMPLOYER, CISCO SYSTEMS, INC., CREATE PRESUMED PREJUDICE AGAINST DALY, WHICH INFRINGES ON HIS CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY AND TRIAL IN SAN JOSE.

Under Rule 21(a), the court may transfer the venue upon the motion of the defendant if the court has determined that "so great a prejudice" against the defendant exists and will prevent the defendant from obtaining a fair and impartial trial within that district.  *See* Fed. R. Crim. P. 21(a).

To support a motion for change of venue due to local prejudice, a defendant needs to show only presumed or actual prejudice. *United States v. Sherwood,* 98 F.3d 402, 410 (9th Cir.1996). To meet the presumed prejudice standard, the defendant must demonstrate a reasonable likelihood that prejudicial news prior to the trial impeded a fair trial. *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Moreover, when the community where the trial occurred was "saturated with prejudicial and inflammatory media publicity" about the alleged crime, prejudice is presumed and the defendant does not need to show actual bias. *Harris*, 885 F.2d at 1361. A defendant demonstrates actual prejudice when voir dire reveals that a fair and impartial jury cannot be achieved, *Bashor v. Risley*, 730 F.2d 1228, 1235 (9th Cir.1984), cert. denied, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984), or that the jurors at the defendant's trial exhibited "actual partiality or hostility that could not be laid aside," *Harris*, 885 F.2d at 1363.

The district court should grant a change of venue when local prejudice against the defendant impedes his ability to obtain a fair trial. *United States v. Flores-Elias*, 650 F.2d 1149, 1150 (9th Cir.1981). To determine whether Daly's case meets the presumptive prejudice standard, the reviewing court will examine relevant media and news clippings to determine whether they tend to accuse the defendant rather than report the facts. *Id.* A trial judge has broad discretion in ruling on a motion for change of venue, and his ruling will be reversed only for an abuse of discretion. *Id.*

In *U.S. v. Flores-Elias*, the Ninth Circuit Court of Appeals upheld the lower court's denial of the appellant's motion for a change of venue because the pre-trial publicity mentioned the appellant's name only once and the majority of the publicity was

factual, rather than emotional or accusatory. *Flores-Elias*, 650 F.2d at 1150; *see also United States v. McDonald*, 576 F.2d 1350, 1354 (C.A.Ariz., 1978) (Defendant's name mentioned only once in pre-trial publicity.)

Daly acknowledges that in the current pre-trial phase of his case, only presumptive prejudice, rather than actual prejudice, would limit his ability to obtain a fair trial. Daly's case differs from *Flores-Elias* in that all of the news articles referring to his alleged fraudulent dealings with Cisco specifically report his name. *See* Appendix A. Since the announcement of Daly's arrest and indictment, pervasive media attention has focused on Daly from local San Jose area news outlets to technology news sites throughout the United States. *See* Appendix A. International news agencies in the United Kingdom, Canada, and France have also named Daly as a perpetrator of fraud against Cisco. *See* Appendix A. A number of articles even characterize Daly's involvement with Cisco as a "scam." *See* Appendix A. Incredibly, major news source *U.S. News & World Report* singled out Daly for its illustrious list of "Bad Guys" in its "Top Computer Crimes of 2007" article even though the government has brought similar charges of fraud against defendants in similar cases.

Daly further maintains that pre-trial publicity concerning the alleged fraud against Cisco, a major employer in the San Jose community, will render it extremely difficult, if not impossible, for him to secure a fair and impartial jury for trial. Cisco's headquarters are based in San Jose, the same location of the USDC assigned as the venue for his trial. Cisco is the largest private employer in San Jose. Given that Cisco employs nearly 15,500 workers at its San Jose headquarters, it will be difficult to find impartial jurors without ties to Cisco. To compound the difficulty for securing an impartial trial, Cisco's

status as the largest employer in San Jose also affects the financial interests of the San

Jose community as a whole.  Thus, where the alleged crimes committed by Daly relates

to the financial interests of the San Jose community on the whole, Daly strongly urges the

court to transfer the venue to the District of Massachusetts weighs in favor of the

Defendant's convenience.

## IV.  CONCLUSION

For all of the above reasons, Daly contends that local prejudice and inconvenience

will prevent him from obtaining an impartial trial and therefore requests this Honorable

Court to grant his Motion for Change of Venue in the interest of justice.


The Defendant, MICHAEL A. DALY,
By his Attorney,


/s/ Douglas I. Louison
Douglas I. Louison (*Pro hac vice*)
Merrick, Louison & Costello, LLP
67 Batterymarch Street
Boston, MA 02110
(617) 439-0305

Date: September 6,  2007

## <u>CERTIFICATE OF SERVICE</u>

I, Douglas I. Louison, hereby certify that, on the 6th day of September, 2007, I

served the foregoing Memorandum of Law in Support of Defendant's Motion for Change

of Venue by electronic filing and by causing a copy to be mailed, postage prepaid,

directed to:

> **Matthew A. Lamberti**, Assistant United States Attorney
> U.S. Department of Justice
> 150 Almaden Boulevard, Suite 900
> San Jose, CA 95113-2009
> Fax: (408) 535-5066

/s/ Douglas I. Louison
Douglas I. Louison

APPENDIX A

1. Computer Crime Research Center, *Top Computer Crime in 2007* (May 17, 2007), *available at* http://crime-research.org/articles/2670/, (last visited August 1, 2007).

2. MercuryNews.com, *Man Charged with Cisco parts scheme* (May 11, 2007)*, available at* http://www.mercurynews.com/business/ci_5870093 (last visited August, 2007).

3. NBC11.com, *Man Indicted In Cisco Fraud Case* (May 11, 2007), *available at* http://www.nbc11.com/technoarchive/13303228/detail.html (last visited August 1, 2007).

4. Net India, *Cisco suffers two alleged frauds* (March 8, 2007) *, available at* http://www.zdnetindia.com/zdnetnew2007/index.php?action=articleDescription&prodid=901 (last visited August 1, 2007).

5. Network World, *Second Cisco scam arrest made in less than a week* (March 7, 2007), *available at* http://www.networkworld.com/community/?q=node/12225 (last visited August 1, 2007).

6. SFGate.com, *Fraud is alleged in product returns* (May 11, 2007)*, available at* http://www.sfgate.com/cgi-bin/article.cgi?file=/chronicle/archive/2007/05/11/BUG79PP6MS1.DTL&type=business (last visited August 1, 2007).

7. Silicon Valley/San Jose Business Journal, *Man Accused of defrauding Cisco of millions* (February 28, 2007)*, available at* http://www.bizjournals.com/sanjose/stories/2007/02/26/daily48.html (last visited August 1, 2007)

8. The Inquirer FR, *Cisco victime d'une double fraude* (March 7, 2007), *available at* http://fr.theinquirer.net/2007/03/07/cisco_victime_dune_double_frau.html (last visited on August 1, 2007).

9. The Statesman, *Ghanaian charged in US for $10m fraud* (March 12, 2007)*, available at* http://www.thestatesmanonline.com/pages/news_detail.php?newsid=2705&section=1 (last visited August 1, 2007).

10. U.S. News & World Report; Bad Guy, *Top Computer Crimes of 2007 (First Quarter)* (May 15, 2007), *available at* http://www.usnews.com/usnews/news/badguys/070515/top_computer_crimes_of_2007_fi.htm (last visited August 1, 2007).

11. United States Department of Justice, *Grand Jury Indicts Massachusetts Man for Wire Fraud and Money Laundering in Connection with Multi-Million Dollar*

*Cisco Networking Equipment Fraud* (May 10, 2007)*, available at* http://sanfrancisco.fbi.gov/dojpressrel/2007/sf051007a.htm (last visited August 1, 2007).

12. United States Department of Justice, *Massachusetts Man Charged with Defrauding Cisco of Millions of Dollars Worth of Computer Networking Equipment* (February 28, 2007), *available at* http://www.usdoj.gov/criminal/cybercrime/dalyCharge.htm (last visited August 1, 2007).

APPENDIX B

1.  Flights Found – Boston, MA to San Jose, CA; Departing 20 August 2007;
    *available at*  http://www.sidestep.com/air/search_result.do (last accessed August
    1, 2007).

2.  Flights Found – San Jose, CA to Boston, MA; Departing 20 August 2007;
    *available at*  http://www.sidestep.com/air/search_result.do (last accessed August
    1, 2007.